IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES DENT, # N-42308, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17-cv-1356-MJR |
| ) | |
| JEFFREY M. DENNISON ) | |
| (Official Capacity), ) | |
| and JOHN BALDWIN (Official Capacity), ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff, currently incarcerated at Shawnee Correctional Center ("Shawnee"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants have knowingly housed him in unsanitary and unhealthy living conditions at Shawnee, and have failed to mitigate those conditions. Along with the Complaint, Plaintiff has filed a motion seeking a temporary restraining order ("TRO") and preliminary injunction. (Doc. 3). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## **The Complaint**

On May 10, 2016, Baldwin (Director of the Illinois Department of Corrections - "IDOC") ordered Plaintiff transferred from the Big Muddy River Correctional Center to Shawnee. This was an emergency transfer prompted by an external investigation against a correctional officer at Big Muddy. (Doc. 1, p. 2). Plaintiff has been held at Shawnee in 8 different cells during the

course of his confinement there. Each cell had serious deficiencies which were not remedied by corrections officers or by the Defendants, despite Plaintiff's requests, grievances, and letters. Plaintiff states he has been incarcerated for 34 years, and has never before been held in such inhumane conditions as he has endured over the past year and a half at Shawnee.

In each of the cells, the ventilation vents were clogged with rust and dust, preventing fresh air from entering the room. Floor tiles, allegedly composed of asbestos, were loose and/or broken, posing a health hazard from friable asbestos fibers. (Doc. 1, p. 10). Windows were broken in several of the cells, exposing Plaintiff to rain in the summer, cold air in the winter, and vermin. The cloth mattresses were contaminated with feces, urine, and rust, and smelled bad. (Doc. 1, pp. 2-4, 9, ). No mattress cover was provided, and Plaintiff was given stained and torn sheets. (Doc. 1, pp. 2-4). The prison has had an outbreak of scabies, staph infections, and bed bugs due to the unsanitary conditions. (Doc. 1, pp. 8, 14). Plumbing problems were common, including an inoperable cold water tap (Doc. 1, p. 3), a sink that shot out hot and cold water (Doc. 1, p. 9), and toilets that would not properly flush (Doc. 1, pp. 4, 9, 12-13). The showers were contaminated with mold and dirt, provided cold water which only rarely warmed up, and also had vents clogged with dust and rust. (Doc. 1, pp. 9, 13, 15, 20).

Plaintiff was fortunate to have funds to purchase new sheets and a pillow, to replace the torn and stained sheets he was issued upon his arrival. However, he was also charged a fee for the torn sheets, because he was wrongly blamed for having damaged them. (Doc. 1, pp. 6, 8). The prison-issued clothing was also worn out and inadequate. (Doc. 1, p. 7).

In May 2016, in Cell 4-D-21, Plaintiff had to stay in his cell for 6 days without a working toilet. (Doc. 1, p. 9). The smell of human waste was not contained by the plastic bag he was given to cover the toilet bowl.

On July 8, 2016, Plaintiff was moved to Cell 4-D-77. (Doc. 1, p. 11). In addition to the clogged vents, contaminated mattresses, and broken floor tiles, the light fixture cover was broken, with dangling pieces of rusty metal that could be made into a weapon. Plaintiff reported the conditions to an officer, but was told not to be concerned because "the entire prison is falling apart." (Doc. 1, p. 11).

In October 2016, Plaintiff was placed in Cell 1-D-17, where he stayed for 4 months. This cell had all the problems listed above, and in addition, had an inoperable window which could not be closed. (Doc. 1, p. 12). The screen had been intentionally cut by prison officials to allow an inmate to reach through and pull the window up. Cold air came in through the window, and there was no heat. After about a month, a maintenance worker screwed the window shut and covered it with a plastic bag, but cold air still came in. (Doc. 1, p. 13). In late November, the heat was turned on, and then the cell became oppressively hot, dry, and stuffy because of the clogged vents.

On January 31, 2017, Plaintiff was moved to cell 4-A-25, where he stayed for 4 days. (Doc. 1, p. 14). He was then moved to Cell 4-A-53 on February 6, 2017. (Doc. 1, p. 15). In both cells, the mattresses were moldy, smelled of urine, and contaminated with rust. Vents were clogged, floor tiles were loose or missing, and light covers were broken. The 4-House cell windows were functional, but the showers were dirty and moldy. (Doc. 1, p. 15).

In June 2017, Plaintiff was moved to Cell 3-C-53, where he still remains as of the time he filed this suit. (Doc. 1, p. 15). The floor tiles are intact and the mattresses are in good shape. However, this cell has a broken window knob and a hole in the screen. (Doc. 1, p. 15-16). During September and October 2017, freezing air came in through the broken window. On October 31, 2017, when the weather happened to be warm, the window was sealed shut by

maintenance workers and the heat was turned on. (Doc. 1, pp. 17-18). As in the previous winter, Plaintiff's cell is now unbearably hot and stuffy because of the sealed window and clogged vent. Plaintiff alleges that after funds ran out to replace windows, Dennison and Baldwin ordered prison workers to cut the screens on the broken windows throughout the facility to allow the windows to be opened in summer, and likewise ordered those broken windows to be fastened shut during winter, cutting off fresh air to the affected cells. (Doc. 1, pp. 18-19). Plaintiff suffers frequent nosebleeds because of the dry air, which aggravates his migraine headaches. (Doc. 1, pp. 18-19, 29).

Additionally, the door access button is broken in Plaintiff's current cell. This means that when officers in the control center activate the door access to allow prisoners out for meals, dayroom, yard, gym, or any other activity, Plaintiff is unable to use his button to exit the cell like all the other inmates on his wing. The only way Plaintiff can get out of his cell is by persuading another prisoner to alert an officer to let him out. Often, Plaintiff has not been let out until 30 minutes or an hour had passed. Plaintiff asked for the button to be repaired, but officers told him that "maintenance does not fix anything around here." (Doc. 1, p. 16). Consequently, over the last 6 months, Plaintiff has missed many meals, as well as recreation, showers, telephone, chapel, and other activities which the other prisoners routinely access. (Doc. 1, pp. 16-17, 21). These deprivations have affected his mental and physical health, and the time he has been forced to stay in the cell rather than engage in out-of-cell activity has increased his exposure to the stale, hot, and dry air in the cell.

Plaintiff has notified Defendants of the broken door button and other problems, but they have failed to take any steps to correct the conditions so that Plaintiff's regular access to meals, exercise, showers, and other privileges may be restored. (Doc. 1, pp. 22, 34-42). Recently, other

5

inmates have been attempting to extort money from Plaintiff in exchange for informing officers that Plaintiff needs to be let out of his cell. (Doc. 1, p. 28-29).

Plaintiff also complains that the cellhouse is infested with spiders, insects, mice, and bats; he deals with spider bites and mice on a daily basis. (Doc. 1, pp. 20, 29). The showers are moldy and dirty. The laundry room where Plaintiff must take his soiled clothes and linens twice a week is constantly flooded with sewage water due to backed up plumbing. *Id.* Food is undercooked and contaminated. (Doc. 1, pp. 20-21). He has been exposed to scabies, bed bugs, and other diseases from the 8 different soiled mattresses in his various cells. (Doc. 1, p. 21). The sinks by the dayroom toilets do not work, so inmates cannot clean their hands after using the toilet, and hand sanitizer dispensers are never filled. Those inmates then go on to use the telephones, kiosk machines, and doorknobs in the dayroom, spreading germs. (Doc. 1, p. 23). Power outages are frequent, during which the cell locks may be opened by inmates, creating a security threat. (Doc. 1, p. 24). Plaintiff perceives this issue as a particular threat to him, because he is classified as a vulnerable inmate due to being openly gay and having been assaulted in the past. (Doc. 1, p 25). Finally, he complains that the law library is inadequately staffed. (Doc. 1, pp. 26-27).

Plaintiff has informed both Defendants of the allegedly unconstitutional conditions at Shawnee, including the denial of access to meals, recreation, etc., because of the broken cell door access button. He filed emergency grievances to Dennison in October and November 2017, which detailed the problems with his current cell. (Doc. 1, pp. 39-42). Dennison, however, deemed these not to be emergency matters. (Doc. 1, p. 27). Plaintiff wrote a detailed letter to Baldwin complaining about these issues as well. (Doc. 1, pp. 5, 27, 34-38). However, neither Defendant has taken any action to remedy the unhealthy conditions or the broken door access

button. (Doc. 1, pp. 5-6, 27-28).

Plaintiff sues both Warden Dennison and Director Baldwin in their official capacities only. (Doc. 1, pp. 1, 5). He seeks compensatory and punitive damages, and injunctive relief in the form of an order to immediately repair the dangerous conditions at Shawnee, and to transfer Plaintiff to a prison of his choice. (Doc. 1, pp. 29-30).

## **Merits Review Pursuant to 28 U.S.C. § 1915A**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment deliberate indifference claim against Dennison and Baldwin, for allowing Plaintiff to be housed in unsanitary and hazardous conditions at Shawnee since May 2016;
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Dennison and Baldwin, for depriving Plaintiff of regular access to meals, exercise, showers, chapel, and other out-of-cell activities since June 2017 because of a nonfunctional door access button, which prevents Plaintiff from exiting the cell when officers release the locks for the cellblock;
>
> **Count 3:** Access to court claim based on the inadequate law library facility at Shawnee.

The claims in Counts 1 and 2 shall proceed for further consideration in this action. However, Count 3 fails to state a claim upon which relief may be granted, and shall be dismissed without prejudice.

## **Count 1 – Unsanitary Conditions**

The Eighth Amendment prohibition on cruel and unusual punishment forbids

unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *Rhodes*, 452 U.S. at 346; s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992).

Claims under the Eight Amendment have both an objective and subjective component. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter*, 501 U.S. 294, 302 (1991). The objective conditions must have resulted in an unquestioned and serious deprivation of basic human needs or deprived the inmate of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

The subjective component of unconstitutional punishment focuses on the state of mind of the defendant. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992); *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994). In conditions of confinement cases, this is deliberate indifference to inmate health or safety. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. *Farmer*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer harm. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

In Plaintiff's case, he alleges that the unsanitary conditions at Shawnee have exposed him

8

since May 2016 to human waste and its odors; subjected him to physical ailments because of the poor ventilation, vermin infestation, and filth; and exposed him to communicable diseases and asbestos. "[C]onditions of confinement, even if not individually serious enough to work constitutional violations, may violate the Constitution in combination when they have a 'mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006); *Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995)). Furthermore, the "exposure to psychological harm or a heightened risk of future injury from living in an infested jail is itself actionable." *See Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013) (citing *Thomas v. Illinois*, 697 F.3d 612, 615-17 (7th Cir. 2012) (admonishing district judges to treat psychological and probabilistic harm from unsanitary and infested prisons as seriously as realized physical harm). Finally, a prisoner's right to adequate and healthy ventilation has been recognized as necessary to meet constitutional requirements. *See Board v. Farnham*, 394 F.3d 469, 486-87 (7th Cir. 2005) (collecting cases).

Plaintiff has sufficiently alleged facts that satisfy the objective component of an Eighth Amendment claim. He has also claimed that he informed both Defendants of the conditions which have created serious risks to his health and continue to do so, but neither has taken any steps to mitigate those risks. At this stage, Plaintiff may proceed with the claim in **Count 1** against Dennison and Baldwin, to the extent that he is seeking injunctive relief.

Plaintiff specifically noted in his pleading that he is suing Dennison and Baldwin in their official capacities only. He does not include an individual-capacity claim against either Defendant. A suit against a prison warden or state agency department director in his or her official capacity is a suit against the state itself, and under the Eleventh Amendment, a state may

not be held liable for damages in a civil rights action. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dept. of State Police,* 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment).

However, it is proper (and necessary) to bring suit against Dennison and/or Baldwin in their official capacities, in order to obtain prospective injunctive relief. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out). Under the doctrine of *Ex parte Young*, a plaintiff may file "suit[ ] against state *officials* seeking prospective equitable relief for ongoing violations of federal law . . . ." *Marie O. v. Edgar,* 131 F.3d 610, 615 (7th Cir. 1997) (emphasis added); *see also Ex parte Young*, 209 U.S. 123, 159-60 (1908); *Ind. Prot. and Advocacy Servs. v. Ind. Family and Soc. Servs. Admin.*, 603 F.3d 365, 371 (7th Cir. 2010).

Accordingly, **Count 1** shall proceed at this time, limited to consideration of whether Plaintiff is entitled to injunctive relief.

### Count 2 – Deprivation of Meals, Exercise, and Out-of-Cell Activities

Because of the broken cell-door access button, Plaintiff has been deprived of meals, out-of-cell exercise and recreation, as well as a number of privileges on an ongoing basis for at least 6 months. His intermittent exclusion from those out-of-cell opportunities also results in Plaintiff being required to spend more time inside his hot and poorly-ventilated cell during the winter.

A prisoner's claim that he is being denied food may satisfy the objective element of an

Eighth Amendment claim but, as the Seventh Circuit has held, the denial of food is not a *per se* violation of the Eighth Amendment. Rather, a district court "must assess the amount and duration of the deprivation." *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). *See generally Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (it would be an Eighth Amendment violation to deny a prisoner an "identifiable human need such as food"); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) (withholding food from an inmate can, in some circumstances, satisfy the first *Farmer* condition). Although "[o]ne or two missed meals are not actionable as Eighth Amendment violations," an inmate who misses more than two meals may be able to show a constitutional violation. *Curiel v. Stigler*, 2008 WL 904894, *5 (N.D. Ill. Mar. 31, 2008); *Reed,* 178 F.3d at 853 & 856 (denial of food for three to five days at a time created a genuine issue of material fact as to an inmate's Eighth Amendment claim).

Plaintiff here has alleged that he has often missed meals due to his inability to leave his cell promptly when inmates on his housing unit are released to go to the dining facility. This problem has persisted for 6 months, and the condition is ongoing. Plaintiff has notified both Defendants about the broken cell exit button, yet they have taken no steps to remedy it. Based on the factual allegations in the Complaint, Plaintiff's claim in **Count 2** for injunctive relief to allow him unobstructed access to meals shall proceed for further review.

Plaintiff's need for access to physical activity is also a concern. The Seventh Circuit has noted that a "[l]ack of exercise could rise to a constitutional violation where movement is denied and muscles are allowed to atrophy, and the health of the individual is threatened." *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988); *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. denied*, 479 U.S. 817 (1986). Additionally, repeated short-term denials of exercise privileges may violate the Eighth Amendment. *Turley v. Rednour*, 729 F.3d 645, 652-53 (7th

Cir. 2013) (plaintiff stated Eighth Amendment claim where cumulative effect of repeated lockdowns deprived him of yard privileges, and cell was too small for physical activity).

In Plaintiff's case, the extent of his deprivation of exercise time out of his cell is not clear. He may be able to engage in physical activity inside his cell when he is unable to go out, but the Complaint does not address that question. Another factor affecting Plaintiff's health, however, is the heat and lack of ventilation in the cell during the current winter season. Those environmental factors may combine to make in-cell exercise difficult – and they also increase Plaintiff's need for the relief offered by outdoor and other out-of-cell time on an equal basis with other inmates on his housing wing. Accordingly, further review of **Count 2** shall also encompass Plaintiff's need for injunctive relief to allow him unhindered access to out-of-cell exercise and recreation opportunities.

Plaintiff also alleges that the nonfunctional door-release has caused him to miss showers, but he does not indicate how often this has happened. Given the other sanitation problems that pervade the prison, this deprivation may aggravate the risks to Plaintiff's health, and might amount to another constitutional violation. However, there is no clear standard as to the minimum frequency of showers an inmate must be allowed in a particular period of time. *See Davenport v. DeRobertis*, 844 F.2d 1310, 1316-17 (7th Cir. 1988) (one shower per week for inmates in segregation is constitutionally sufficient). This matter may also be considered under **Count 2.**

The deprivation of access to religious/chapel services may also violate Plaintiff's First Amendment rights to practice his religion. The Complaint includes only a general allegation that Plaintiff has missed chapel on some occasions, without further facts. It appears that this matter may be resolved in the course of addressing the issues of Plaintiff's access to regular meals and

exercise outside his cell, thus, it shall not be discussed further at this time.

To summarize, **Count 2** shall proceed against Dennison and Baldwin, for consideration of injunctive relief only.

### Dismissal of Count 3 – Law Library

Plaintiff's general complaint that law library staffing and resources are inadequate is not sufficient to state a claim upon which relief may be granted. "[T]he mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts*, and only if the defendants' conduct prejudices a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement has this right been infringed." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006).

Here, Plaintiff has not described any incident where his own ability to access the courts has been hindered due to the allegedly inadequate law library. To state a claim for denial of access to the courts, a plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions," *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010). A mere delay does not suffice; a prisoner must show actual substantial prejudice to specific litigation. *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992), *cert. denied*, 506 U.S. 1062 (1993).

Because the Complaint does not allege that Plaintiff's ability to pursue specific litigation has been hindered, **Count 3** shall be dismissed without prejudice.

### **Pending Motions**

Plaintiff's motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 2) is **GRANTED**.

A separate order directing the prison trust fund officer to deduct payments from Plaintiff's inmate trust account in accordance with 28 U.S.C. § 1915(b) shall be entered forthwith.

Plaintiff has filed a motion requesting a TRO and preliminary injunction (Doc. 3). Insofar as this motion seeks a temporary restraining order (TRO), it is **DENIED IN PART**. However, that portion of the motion which seeks a preliminary injunction (Doc. 3) is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further consideration.

A TRO is an order issued without notice to the party to be enjoined that may last no more than fourteen days. A TRO may issue without notice:

> only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b). In the prison context, the orders are typically employed "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

Without expressing any opinion on the ultimate merits of any of Plaintiff's other claims for relief, the Court concludes that a TRO should not issue in this matter. Plaintiff's allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants can be heard*. By his own description, Plaintiff is able to eat meals on many occasions, and is able to access some out-of-cell exercise and other activities, although he faces challenges in obtaining assistance to exit his cell, and his situation is unpredictable from day to day. He has noted that he has an acceptable mattress in his current cell, and has not indicated that the sink or toilet is in poor repair. Additionally, if the Court determines that Plaintiff is

entitled to injunctive relief, the input of all parties concerned will greatly assist in fashioning a remedy that is narrowly tailored to mitigate future harm to Plaintiff.

As noted above, the Court's threshold review dictates that Plaintiff's request for preliminary injunctive relief deserves prompt consideration. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's motion for a preliminary injunction (Doc. 3) is hereby **REFERRED** to United States Magistrate Judge Stephen C. Williams, who shall resolve the request as soon as practicable and issue a Report and Recommendation.

The motion to request inspection (Doc. 4) is also referred to the United States Magistrate Judge for further consideration.

## Disposition

**COUNT 3** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**COUNTS 1 and 2**, along with the motion for a preliminary injunction (Doc. 3), are **REFERRED** to Magistrate Judge Williams, who shall resolve the request for injunctive relief as soon as practicable and issue a Report and Recommendation. Any motions filed after the date of this Order that relate to the request for injunctive relief or seek leave to amend the Complaint are also **REFERRED** to Magistrate Judge Williams.

**IT IS FURTHER ORDERED** that the Clerk of Court shall take appropriate steps in coordination with the U.S. Marshals Service, to effect formal, **PERSONAL SERVICE** of summons, the Complaint, the motion for preliminary injunction (Doc. 3), and this order upon each Defendant at his or her work address, as provided by Plaintiff. The Court will not require Defendants to pay the full costs of formal service, as the Court is ordering personal service to expedite the resolution of Plaintiff's motion for a preliminary injunction.

The United States Marshals Service is **APPOINTED** pursuant to Federal Rule of Civil Procedure 4(e) to effect service. The Clerk is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **DENNISON** and **BALDWIN.** The Clerk shall issue the completed summons, and prepare a service packet for each Defendant consisting of: the completed summons, the completed form USM-285, a copy of the complaint (Doc. 1), the motion for preliminary injunction (Doc. 3), and this Memorandum and Order. The Clerk shall deliver the service packets for each Defendant to the United States Marshals Service for personal service on each Defendant.

Pursuant to Federal Rule of Civil Procedure 4, **within 14 days of the date of this Order**, the United States Marshals Service **SHALL PERSONALLY SERVE** upon Defendants **DENNISON** and **BALDWIN,** the service packets containing the summons, form USM-285, a copy of the Complaint (Doc. 1), the motion for preliminary injunction (Doc. 3), and this Memorandum and Order. **LEAVING THE SUMMONS WITH THE PRISON'S LITIGATION COORDINATOR IS NOT SUFFICIENT – each Defendant must be personally served**. All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In order to assist the Court in its resolution of the motion for preliminary injunctive relief (Doc. 3), Defendants **DENNISON** and **BALDWIN SHALL FILE A RESPONSE** to the motion within 14 days of the date of service of the summons.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 20, 2017**

s/ MICHAEL J. REAGAN
Chief Judge
United States District Court
